IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MALIBU MEDIA, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No.: 2:12-cv-02084 |
| v. ) | |
| ) | Hon. Michael M. Baylson |
| JOHN DOES 1 – 14, ) | |
| ) | |
| Defendants. ) | |

**BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA AND/OR SEVER**

COMES NOW Defendant John Doe 6, by and through counsel, and pursuant to Federal Civil Rules of Procedure 20, 26, and 45 files this Brief in Support of his/her Motion to Quash Subpoena and/or Sever for Improper Joinder, showing the Court as follows:

I.   INTRODUCTION

Plaintiff is a producer of copyrighted pornography. Plaintiff has discovered that its copyrighted material is available for possibly unlawful and possibly infringing download by use of the distribution protocol known as BitTorrent. Pornographers have embraced an aggressive strategy to address the distribution of their videos via BitTorrent — trace the file-sharing to an Internet Protocol ("IP") address (an anonymous series of numbers which relates to a possible Internet Service Provider ("ISP") subscriber), then file copyright infringement suits naming dozens (and in some cases, thousands) of John Doe defendants, then serve subpoenas on the ISPs to reveal the subscriber name and address. Once this information has been obtained, the pornographers aggressively demand settlement from the subscriber, who frequently pay

1

simply to make the aggressive tactics stop. This is one such case.

On May 18, 2012, Plaintiff obtained leave of this Court by *ex parte* motion to serve third-party subpoenas prior to a Rule 26(f) Conference upon Comcast Corporation ("Comcast") seeking the names and addresses of 14 Comcast subscribers, suspected as John Doe defendants in this copyright infringement case.

Comcast in turn contacted its subscribers and informed them by letter of the existence of the subpoena and the pendency of this action. The recipient of one such letter, the suspected John Doe 6, is the subscriber associated with IP address 71.224.144.232. Contemporaneously with this brief, John Doe 6 filed a Motion to Quash Subpoena and/or Sever and a Declaration in support thereof, expressing her/his objection to the subpoena.

II. THE SUBPOENA TO COMCAST MUST BE QUASHED

A) <u>John Doe 6 Has Standing to Challenge the Subpoena Because She/He Is the Real Party at Interest in the Matter.</u>

A party has standing to challenge a subpoena issued to a third-party when the party has a personal right or privilege in the information sought by the subpoena. *See Kida v. EcoWater Systems, LLC*, 2011 WL 1883194, *2 (E.D. Pa. 2011) (Baylson, J.) (attached hereto as Exhibt A). The information sought by the subpoena directed to Comcast is John Doe 6's name and address — very personal information in which Doe 6 undoubtedly has an interest. Plaintiff will then, in turn, demand substantial amounts of money from Doe 6 in settlement, or else make Doe 6's name and address part of the public record by including it in the caption of this suit.

The John Doe subpoena strategy employed by the hardcore pornography industry is little more than extortion — a racket aimed at quick settlements and easy money. In fact, another Judge of this Court noted its concern that "defendants might be subject to coercive

settlement tactics...." *Malibu Media, LLC v. John Does 1 – 22*, 5:12-cv-3139, Dkt. 5, fn 1 (E.D. Pa. 2012) (Savage, J.) (attached hereto as Exhibit B). Doe 6 suggests this is an understatement — her/his life can be turned upside-down should this subpoena not be quashed. At a minimum, he will be forced to defend against a claim that cannot stand, yet will expose her/him to considerably embarrassing social consequences.

John Doe 6, who steadfastly denies downloading any pornography and who stands to lose considerable amounts of money and reputation simply because his IP address appeared on Plaintiff's list, surely has standing to challenge the subpoena issued to Comcast as the real party in interest.

B) <u>The Subpoena Must Be Quashed Because It Will Subject John Doe 6 to Undue Burden.</u>

Rule 45(c)(3)(A)(iv) requires Courts to quash a subpoena if it will "subject[] a person to undue burden." A subpoena imposes an undue burden if it seeks information that is overbroad. *In re Subpoena Duces Tecum to AOL, LLC*, 550 F.Supp. 2D 606, 612 (E.D. Va. 2008), *citing Theofel v. Farey-Jones*, 359 F.3d 1066, 1071-72 (9th Cir.2004). A subpoena is overbroad if "it does not limit the [information] requested to subject matter relevant to the claims or defenses...." *Id* at 612.

The claim in this case is copyright infringement. "There are two essential questions at the heart of any copyright infringement action: whether the plaintiff owned the copyrighted work and *whether the defendant copied it.*" *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir.2009) (emphasis added). The name or address of John Doe 6 does not advance the claims or defenses, as Doe 6's identifying information is unlikely to reveal the identity of the infringer. Instead, it will reveal the name and address of a Comcast subscriber — not an infringer.

Copyright infringement is a singular act of wrongdoing attributable to a single person. However, *an IP address is not a copyright infringer*, nor does it even necessarily follow that identifying the IP address from which an act of infringement occurred mean that the infringer will be found in the house. John Doe 6's operated a Linksys E4200 router, which created two wireless networks — one was a closed network with at least six (6) authorized users; and the other was an open network, unprotected and accessible to all within 100 feet of the house. *See* Declaration of John Doe 6, filed contemporaneously herewith.

Identifying the subscriber would not get Plaintiff even one inch closer to identifying the infringer. On the other hand, many people have been incorrectly identified as suspects in a variety of civil and criminal matters based solely on IP address information. As Judge Baker of the Central District of Illinois noted:

> [Plaintiff] ignores the fact that IP subscribers are not necessarily copyright infringers. Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York).
>
> *VPR Internationale v. Does 1 – 1017*, 2:2011-cv-02068, Dkt. 15 at 2, (C.D. Ill. 2011) (Baker, J.), (attached hereto as Exhibit C), *citing* Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/ (attached hereto as Exhibit D).

More recently, police in Evansville, Indiana traced threats posted on a public web forum to an IP address — based solely on the IP address, the police obtained a search warrant compelling the ISP to reveal the subscriber's name and address. The police then sent a SWAT

4

team into the house in a full-blown raid — it was later discovered that the house maintained an open wireless network, and the threats originated from a neighbor. *See* Nate Anderson, *SWAT team throws flashbangs, raids wrong home due to open WiFi network*, June 28, 2012, http://arstechnica.com/tech-policy/2012/06/swat-team-throws-flashbangs-raids-wrong-home-due-to-open-wifi-network/ (attached hereto as Exhibit E).

The Eastern District of Pennsylvania has also recognized this fact in a widely-cite case, *BMG Music v. Does 1-203*, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004) (Newcomer, J.) (attached hereto as Exhibit F). That Court noted, "Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe...." *Id*, at 1. In short, that a copyrighted file might have been downloaded unlawfully to a particular IP address is in no way itself evidence that any one person with access to that IP address actually infringed the copyright in question. As one court put it, "it is not more likely that the subscriber to an IP address carried out a particular computer function — here the purported downloading of a single pornographic film — than to say an individual who pays the telephone bill made a specific telephone call." *In re BitTorrent Adult Film Copyright Infringement Cases*, 2:11-cv-03995, Dkt. 39 at 6, (S.D.N.Y. 2012) (Brown, USMJ) (attached hereto as Exhibit G).

Furthermore, the identity of the subscriber at the IP address in question is likewise irrelevant to the claim of contributory infringement. Like direct infringement, contributory infringement is a singular act of wrongdoing attributable to a specific actor. To prove contributory infringement, the Plaintiff must prove that the alleged infringer had (1) knowledge of the infringing activity, and (2) induced, caused, or materially contributed to the infringing conduct of another. *Parker v. Google, Inc.*, 422 F.Supp.2d 492, 498-99 (E.D. Pa.

5

2006), *quoting Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Additionally, inducement requires "evidence of active steps… taken to encourage direct infringement." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005), *quoting Oak Industries, Inc. v. Zenith Electronics Corp.*, 697 F. Supp. 988, 992 (ND Ill. 1988).

In the instant case, Plaintiff cannot prove contributory infringement because maintenance of an open wireless network is not an "active step taken to encourage direct infringement." Quite on the contrary, the most that Plaintiff can establish is that someone may have misappropriated John Doe 6's network — this theory of infringement is not recognized under the law. Inexorably, the argument falls back in on itself — an IP address is not an infringer, nor is an IP address even necessarily evidence of infringement. Disclosing the subscriber's name and address under these circumstances brings the Plaintiff no closer to the identity of an infringer, direct or contributory.

In this case, John Doe 6 maintained two networks — one open to all, one secure with at least six authorized users. *See Declaration of John Doe 6* at ¶ 6-7. Both networks could be traced to the IP address associated with Doe 6's Comcast account, but that alone does not and cannot establish that she/he is an infringer. *VPR Internationale, at 2*. This subpoena — indeed, this entire case and the dozens of identical cases filed by this same Plaintiff in this Court — is a fishing expedition of the most brazen variety.

Because an IP address by itself is not itself proof that the subscriber associated with the address is an infringer identity of the subscriber is irrelevant to the action. Plaintiff seeks information not relevant to the claims or defenses. Therefore, the subpoena is overbroad and unduly burdensome.

### III. JOHN DOE 6 SHOULD BE SEVERED FROM THIS ACTION BECAUSE JOINDER IS NOT PROPER UNDER RULE 20(A).

#### A) Each Defendant Individually Downloading The Same Film Is Not the Same Transaction or Occurrence.

The Plaintiff alleges that the various John Doe defendants in this case all infringed its copyright in the work by using the same file-sharing protocol, BitTorrent. Numerous courts across the country, inundated with mass claims of this type, have held that joinder of unrelated parties — indeed, strangers acting alone — because they used BitTorrent to share the same video is improper.

Rule 20(a) permits multiple defendants to be joined in a single action if (1) any claim is asserted against the defendants arising out of the same transaction or occurrence, and (2) any question of law or fact common to all will arise in the action. Fed.R.C.P. 20(a). In this case, the alleged infringement did not occur in the same transaction or occurrence. Furthermore, individual questions of law or fact will predominate the proceedings. Judicial economy will not be served by joining, essentially, 14 individual trials into one.

In this case, Plaintiff alleges that the John Does within the jurisdiction[1] of the Court participated in a "swarm" using BitTorrent, a peer-to-peer file sharing protocol. A swarm is a collection of individuals who all shared the same file, identified by a unique identifier called a "hash." As each user downloads the file, a portion of that file is simultaneously uploaded to

---

1  A close reading of Plaintiff's Complaint demonstrates that the Plaintiff is playing fast and loose with jurisdiction. Paragraph 4 states that the "acts of copyright infringement occurred using an [IP address] *traced to a physical address* within this District...." *See* Complaint, Paragraph 4. Perhaps Plaintiff overplays its hand when it claims that it can trace an IP address to a physical address — after all, the subpoena in question seeks the address of the subscriber, which would be redundant based on its averment in Paragraph 4.

Furthermore, it may not be a true and accurate description of jurisdiction in question. In *Combat Zone Corp. v. Does 1 – 34*, 12-cv-4133 (S.D.N.Y. 2012) (McMahon, J.) (attached hereto as Exhibit H), the Court noted that it had severed all but one John Doe defendant in an earlier case, but the case was withdrawn after the subpoena revealed that the sole remaining defendant lived in another state. *Combat Zone Corp.*, at *2.

another user. In this manner, the burden of distributing the file is shared across all users — the more users sharing portions of a file, the faster it takes for each user to retrieve a copy.

The BitTorrent terminology is misleading. Unlike the swarm of bees from which the term derives, a swarm in this context occurs over months with no contact between the other users. In fact, Exhibit A of the Complaint in this case reveals that the 14 John Does in question downloaded the work between December 2, 2011 and March 15, 2012. *See* Complaint. This fact alone would strongly militate against joinder. *In re BitTorrent Cases*, at 19-20.

The Plaintiff avers that all the John Doe defendants were "working together" as part of the swarm. *See* Complaint, Para. 32. However, fourteen individual persons, a single file over a span of months, cannot possibly be said to be part of a single "swarm," despite what the jargon may misleadingly suggest. In fact, it cannot even be established that the individual John Does in this case shared the file in question with each other, rather than with numerous other downloaders across the country, if they downloaded the file at all.

That a John Doe may have "clicked on a command to participate in the BitTorrent protocol does not mean that [he/she was] part of the downloading by unknown hundreds or thousands of individuals across the country or across the world." *Hard Drive Prods., Inc. v. Does 1 – 188*, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011). On the contrary, the "'interactions' between defendants" amounts to "machine instructions which clearly demonstrate that the user plays no role in these interactions." *In re BitTorrent Cases*, at 19.

In essence, this case attempts to recast isolated acts of possible infringement into a concerted effort. However, this is simply not the case.

B) <u>Severance Is Necessary Because There Are No Common Questions of Law or Fact Among The Defendants.</u>

In this case, individual questions of fact will predominate the proceedings to an extent that renders joinder of the 14 John Does improper. John Doe 6 steadfastly denied downloading the file in question, and has further stated that the router has a range of approximately 100 feet. *See* Declaration. This defense would require substantial testimony concerning the workings of Doe 6's personal router — this might even be beyond the ken of the ordinary juror, necessitating an expert witness to defend the claims against Doe 6 alone. This testimony would probably be completely irrelevant to the other defendants, who may raise defense irrelevant to John Doe 6. The individuality of the defenses would also require massive pretrial discovery, with a minimum of fourteen defendant depositions — and far likelier many multiples of that. The individual nature of the defenses necessitates severance.

The individuality of the defenses has been a key theme in the most recent District Court opinions on misjoinder involving BitTorrent cases. For example, the Northern District of California noted that "permitting joinder would force the Court to address the unique defenses that are likely to advanced by each individual defendant, creating scores of mini-trials involving different evidence and testimony." *Hard Drive Prods.*, 809 F. Supp. 2d at 1164.

This concern was echoed by the Eastern District of New York, which noted, "the half-dozen moving defendants have raised a panoply of individual defenses, including age, religious convictions, and technological savvy; misidentification of ISP accounts; the kinds of WiFi equipment and security software utilized; and the location of defendant's router. The individualized determinations required far outweigh the common questions in terms of discovery, evidence, and effort required. Thus, swarm joinder complicates these actions,

9

resulting in waste of judicial resources." *In re BitTorrent Cases*, 11-cv-03995, at 20.

The Southern District of New York perhaps sums it up best — "There are no litigation economies to be gained from what are in essence [fourteen] different cases together.... Each defendant's situation, which is unique to him or her, will have to be proved separately and independently." *Digital Sins, Inc. v. John Does 1 – 245*, 11-cv-8170, (S.D.N.Y. 2012) (McMahon, J.) (attached hereto as Exhibit I).

Repeat the individual defense of fourteen unrelated persons over and over and it becomes clear that the individual questions of law or fact raised by defendants far outweigh the sole commonality raised by Plaintiff — that it holds the copyright on a film one can download through BitTorrent. Joint trial of fourteen individual cases will only create an costly, unmanageable mess.

    C)    <u>Joinder In This Manner Is An End-run Around Mandatory Filing Fees.</u>

By filing a single complaint, the Plaintiff paid only one filing fee, when it clearly should have filed fourteen individual cases, paying fourteen separate fees. Courts have held that joining as many defendants as possible into a single action is a form of abusive litigation strategy. "Thus, the plaintiffs file a single case, and pay one filing fee, to limit their expenses as against the amount of settlements they are able to negotiate. Postponing a determination on joinder in these cases 'results in lost revenue of perhaps millions of dollars (from lost filing fees) and only encourages plaintiffs in copyright actions to join (or misjoin) as many doe defendants as possible.'" *In re BitTorrent Cases*, 11-cv-03995, at 22-23, *quoting K-Beech, Inc. v. John Does 1 -41*, 2012 WL 773683, at 5 (S.D. Tex. 2012) (Rainey, J.).

The Plaintiff in the present case has filed a total of 26 cases against 435 John Does defendants *in this Court alone*. *See* PACER printout (attached hereto as Exhibit J). By improperly joining these defendants, Plaintiff has avoided paying over $140,000 in filing fees.

Most galling, it is doubtful that Plaintiff has any intent to try any of these cases. Pornographers "simply have used the Court and its subpoena powers ... to shake down the John Does. Whenever the suggestion of a ruling on the merits of the claims appears on the horizon, the plaintiffs drop the John Doe threatening to litigate the matter in order to avoid the actual cost of litigation and an actual decision on the merits." *Raw Films, Ltd. v. John Does 1 – 32*, 3:11-cv-00532, at 4, (E.D. Va. 2011) (Gibney, J.) (attached hereto as Exhibit K).

The strategy employed by the Plaintiff in this matter is very clearly part of an ongoing strategy to demand large sums of money from unwitting persons fearful of humiliation that will follow association with pornography. It is telling that all the authority cited by John Doe 6 on BitTorrent cases come from District Courts on pretrial matters — to counsel's knowledge, none of the hundreds of cases filed across the country has come to trial, and certainly none has resulted in an appellate decision. To try these cases fully would certainly cost far more than the Plaintiff cares to spend, and because the Plaintiff cannot ever demonstrate that John Doe 6 actually downloaded the film in question, as opposed to someone nearby misappropriating Doe 6's network, it is strongly doubtful that Plaintiff will prevail on the merits. Indeed, Plaintiff has no interest in trying.

Therefore, John Doe 6 has demonstrated that (1) quashing of the subpoena is an appropriate remedy to prevent undue burden; (2) severance is an appropriate remedy because (a) the alleged infringement did not occur in the same transaction or occurrence, (b) individual questions of law and fact will predominate over the sole commonality, and (c) the Plaintiff has improperly joined the defendants as part of an abusive litigation strategy that improperly denies the Court of mandatory filing fees, while keeping its own expenses to a minimum as it shakes down John Doe defendants for nuisance-value settlements.

IV.     CONCLUSION

Defendant John Doe 6 has shown that the subpoena must be quashed. To release the information to the Plaintiff will subject her/him to an undue burden, because the identity of an Internet subscriber is irrelevant to advance the claims made in this case, which require the Plaintiff prove the identity of an actual downloader.

Furthermore, John Doe 6 has shown that she/he should be severed from the case because joinder is improper. The alleged infringement did not occur in concert, but over a period of months and not necessarily with the other Defendants in this case. Joinder is improper also because the individuality of the defenses likely to be raised will predominate over the case, far outweighing any common questions of law or fact the Plaintiff may raise. Finally, joinder is inappropriate because the intentional misjoinder of cases advances an aggressive strategy on the part of the Plaintiff to evade filing fees while shaking down defendants for settlements.

WHEREFORE, Defendant John Doe 6 respectfully requests that the Court enter an order quashing the subpoena, and severing her/him from the case, awarding attorney's fees and costs, and any other relief the Court deems just and proper.

                Respectfully submitted,

                /S/ CHARLES THOMAS, JR.
                Charles Thomas, Jr., Esq.
                Attorney for John Doe 6

Charles Thomas, Jr., Esq.
The Thomas Firm
117 West Gay Street
Suite 316
West Chester, PA 19380
877-397-3003
ct@thomastrials.com
Attorney ID: 89781

CERTIFICATE OF SERVICE

    The undersigned hereby certifies that he filed the foregoing Motion to Quash and/or Sever on July 5, 2012 via the Court's CM/ECF filing system, thereby serving all parties of record.

    The undersigned also certifies that he served a copy of the foregoing upon Comcast Legal Response Center, 650 Centerton Road, Moorestown, NJ 08057 via First Class Mail and via facsimile at 866-947-5587.

    Respectfully submitted,

    /S/ CHARLES THOMAS, JR.
    Charles Thomas, Jr., Esq.