**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MALIBU MEDIA, LLC,**<br>　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**JOHN DOES 1-16,**<br>　　　　　**Defendants.** | **CIVIL ACTION NO. 12-2078** |
| **MALIBU MEDIA, LLC,**<br>　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**JOHN DOES 1-14,**<br>　　　　　**Defendants.** | **CIVIL ACTION NO. 12-2084** |
| **MALIBU MEDIA, LLC,**<br>　　　　　**Plaintiff,**<br><br>　　　　v.<br><br>**JOHN DOES 1-22,**<br>　　　　　**Defendants.** | **CIVIL ACTION NO. 12-2088** |

**Baylson, J.**                                                    **October 3, 2012**

**MEMORANDUM RE: OUTSTANDING MOTIONS,
EXPEDITED DISCOVERY, AND BELLWETHER TRIAL**

In Verdi's opera, <u>A Masked Ball</u>, the King is told that conspirators intend to kill him. Not knowing their names, the King consults the gypsy fortune teller, Ulrica, who gives him a clue as to the identity of one of the conspirators. In these cases, similar to many cases throughout the United States, Plaintiff Malibu Media, Inc. alleges that it owns copyrights in certain motion pictures and that unknown defendants have infringed those copyrights by using a peer-to-peer client sharing program, known as BitTorrent, to download the motion pictures without paying royalties to Plaintiff.

I.      **Plaintiff's Allegations and Procedural Background**

Now that the internet and the Federal Rules of Civil Procedure have replaced fortune tellers as a means of securing information, Plaintiff has invoked Rule 45 to secure the identities of the defendants from their respective internet service providers ("ISPs").  Plaintiff has designated all defendants as "John Does" because Plaintiff does not know their identities.  The allegations as to all John Does are identical.  There are 14 to 22 John Does in each of these cases.  Plaintiff asserts that all of the John Does sued in each case reside in this District and are properly joined under Rule 20(a) of the Federal Rules of Civil Procedure.

Each of the John Does is identified only by an internet protocol ("IP") address assigned by an ISP, as set forth in Exhibit A to each Complaint.  Plaintiff commenced these cases on April 19, 2012.  Shortly after filing the Complaints, Plaintiff filed Motions to Serve Third-Party Subpoenas on the ISPs – typically, Comcast Cable or Verizon Internet Services – pursuant to Rule 45 of the Federal Rules of Civil Procedure.  The subpoenas require the ISPs to provide Plaintiff with the names and addresses, as well as additional identification information, of the John Does, so that Plaintiff can serve each with process.

In support of its Motions, Plaintiff submitted a detailed memorandum of law asserting that service of the third-party subpoenas on the ISPs was the only way to secure the identities of the John Does.  Plaintiff asserts, correctly, that the allegations in the Complaints present prima facie claims of copyright infringement.  Moreover, Plaintiff has identified specific information that would allow for limited discovery by means of a Rule 45 subpoena to the ISPs.  Specifically, Plaintiff submitted a declaration of one Tobias Fieser, a forensic investigator, who describes, in considerable detail, the methodology that was used to identify the IP address of each John Doe.

As an exhibit to each motion, Plaintiff also resubmitted Exhibit A to each Complaint, which contains the IP address of each John Doe, the city in which the address is located, the date and time of the infringing activity associated with the address, and the ISP of the address.  All of the IP addresses are located in cities within this District.  The dates of the infringing activity in each of the three captioned cases took place over the course of a few months.

On May 15, 2012, this Court granted Plaintiff's Motions in substance, but imposed a number of conditions on the service of the third-party subpoenas.  In particular, the Court ordered that the subpoenas be accompanied by a statement of rights under Rule 45 to inform the subscribers of their procedural rights to challenge their obligation to provide the information sought by the subpoenas.  See Malibu Media, Inc. v. John Does 1-16, No. 12-cv-2078, ECF No. 8 (E.D. Pa. May 18, 2012); Malibu Media, Inc. v. John Does 1-14, No. 12-cv-2084, ECF No. 8 (E.D. Pa. May 18, 2012); Malibu Media, Inc. v. John Does 1-22, No. 12-cv-2088, ECF No. 8 (E.D. Pa. May 18, 2012).

Since that time, it appears that Plaintiff has served the subpoenas allowed by this Court on the ISPs, and has received information enabling Plaintiff to serve the Complaints on certain John Does.  However, the record does not show that Plaintiff has, in fact, served a Complaint on any John Doe.[1]

---

[1]By order dated August 20, 2012, upon plaintiff's request, the Court extended the deadline for service of the Complaints to 30 days from the time the Court rules on the pending motions.  See Malibu Media, Inc. v. John Does 1-16, No. 12-cv-2078, ECF No. 15 (E.D. Pa. Aug. 20, 2012); Malibu Media, Inc. v. John Does 1-14, No. 12-cv-2084, ECF No. 20 (E.D. Pa. Aug. 20, 2012); Malibu Media, Inc. v. John Does 1-22, No. 12-cv-2088, ECF No. 17 (E.D. Pa. Aug. 20, 2012). Now that the Court has ruled on the pending motions, and in furtherance of this Court's decision to expedite the proceedings, the Court will shorten the time for service on the moving John Does.

**II.      Summary of Motions Presently Before the Court**

In the three captioned cases, six John Does filed separate motions challenging their

obligation to provide the information sought by the subpoenas.  One of those motions was later

withdrawn.  See Malibu Media, Inc. v. John Does 1-22, No. 12-cv-2088, ECF No. 26 (E.D. Pa.

Sept. 14, 2012).  Thus, five motions are currently pending before the Court.  The table below

describes each of these motions along with any supporting documentation that was submitted.

| Moving Party | Title of Motion | Supporting Documentation |
|---|---|---|
| **Malibu Media, LLC v. John Does 1-16, 12-cv-2078** | | |
| John Doe #16 | Motion to Dismiss and/or Sever Complaint and, in the Alternative, Motion to Quash Subpoena (ECF No. 9). | Memorandum of law. |
| **Malibu Media, LLC v. John Does 1-14, 12-cv-2084** | | |
| John Doe #6 | Motion to Quash Subpoena and/or Sever (ECF No. 12). | Sworn declaration taken subject to the penalties against perjury (ECF No. 13). |
| **Malibu Media, LLC v. John Does 1-22, 12-cv-2088** | | |
| John Doe #1 (pro se) | Motion to Dismiss and/or Sever Complaint and Quash Subpoena (ECF No. 14). | Memorandum of law and unsworn declaration by anonymous third party. |
| John Doe #13 (pro se) | Motion to Dismiss and, in the Alternative, to Issue a Protective Order and Motion for Leave to Proceed Anonymously (ECF No. 9). | Memorandum of law. |
| John Doe #14 | Motion to Vacate Order Granting Leave to File Subpoena, to Quash Subpoena, and, Alternatively, for Protective Order (ECF No. 10). | Memorandum of law. |

As the table indicates, two John Does filed declarations in support of their motions.  In

Civil Action No. 12-2088, John Doe #1 filed an unsworn declaration by an anonymous

individual, entitled "Declaration to Refute Information Provided by Plaintiff's Counsel Christopher Fiore, 14 May 2012 hearing."[2]  This declaration, which is 15 pages long, goes into great detail about the BitTorrent software and contains facts, which assuming they are true, refute many allegations in the Complaints and/or Plaintiff's Motion for Leave to Serve Third-Party Subpoenas.  Among other things, the declaration asserts that Plaintiff has brought suit against numerous unnamed defendants simply to extort settlements, that the BittTorrent software does not work in the manner Plaintiff alleges, and that a mere subscriber to an ISP is not necessarily a copyright infringer, with explanations as to how computer-based technology would allow non-subscribers to access a particular IP address.  In other words, according to the declaration, there is no reason to assume an ISP subscriber is the same person who may be using BitTorrent to download the alleged copyrighted material.  Similar assertions are made in memoranda filed in support of the other motions.

In Civil Action No. 12-2084, John Doe #6 filed a sworn declaration subject to the penalties against perjury in support of his motion.  In that declaration, John Doe #6 acknowledges that he is the subscriber with the IP address identified in Exhibit A to the Complaint.  Significantly, however, he specifically refutes and denies the allegations in the Complaint and/or Plaintiff's Motion for Leave to Serve Third-Party Subpoenas.  His declaration provides in pertinent part:

---

[2]This document was also filed in Civil Action No. 12-2084, but not in support of any motion.  See Malibu Media, LLC v. John Does 1-14, No. 12-cv-2084, ECF No. 9 (June 5, 2012).  In this document, the declarant proclaims to be the operator of the website, DieTrollDie, http://dietrolldie.com (last visited Oct. 3, 2012), which provides resources to help John Doe defendants named in mass copyright infringement actions defend themselves.  Other websites provide similar resources.  See, e.g., Fight Copyright Trolls, http://fightcopyrighttrolls.com (last visited Oct. 3, 2012).

3.     For purposes of this Declaration, I remain anonymous and will not disclose my name or location.

4.     I did not download any pornography.

5.     I have never used Bittorent.

6.     I operate a Linksys E4200 router at my home; this devise is capable of operating two wireless networks simultaneously, and can divide the internet service at my home to multiple wireless internet connected devices.

7.     In fact, I use this router to operate two wireless networks – one is a secure network with at least six authorized users; one is an open, unsecured network for the convenience of my guests.

8.     My open network allows anyone to connect to my internet service without entering a password.

9.     The Linksys E4200 router has a range of approximately 100 feet, which would allow many of the neighbors to access my guest network; the radius also reaches to the street in front of and into the area behind my property.

10.    Since learning of this action, I have password protected my guest network.

Malibu Media, LLC v. John Does 1-14, No. 12-2084, ECF No. 13 (E.D. Pa. July 5, 2012).

## III.    Hearing on Pending Motions

The Court held a hearing on the five pending motions listed above on September 18, 2012.  The two moving John Does who are proceeding pro se were not present, but counsel for the remaining three John Does were.  The Court heard extensive presentations both by counsel for Plaintiff and the three represented John Does.

Plaintiff's counsel candidly advised the Court that the Plaintiff's strategy is, after initiating the lawsuits, to seek leave to serve third-party subpoenas on the ISPs to obtain identification information for the IP addresses specified in Exhibit A to the Complaints.  When

Plaintiff receives this information from the ISPs, it contacts the subscribers associated with the IP addresses, usually by letter, advising them of the lawsuits and offering them an opportunity to settle by payment of a monetary sum.  The content of the letters is not yet in the record.  Nor does the Court have any information as to the amount of money that Plaintiff typically demands, or whether and to what extent negotiations take place and ultimately lead to settlements.  If the John Doe defendant who receives the letter agrees to pay, Plaintiff dismisses the complaint against that defendant with prejudice and without any further court proceedings, thus avoiding the public disclosure of the defendant's identity.  If the John Doe defendant refuses to settle, or Plaintiff has been unable to serve the complaint within the 120 days required under Rule 4(m) of the Federal Rules of Civil Procedure, subject to any extension granted by the court, with whatever information is provided by the ISP, Plaintiff dismisses the complaint against that defendant without prejudice to Plaintiff's ability to commence a subsequent action against that defendant. In this fashion, Plaintiff has initiated hundreds of lawsuits in various district courts throughout the country, but has not yet proceeded to trial in any case.[3]

At the hearing, Plaintiff's counsel asserted that Plaintiff's allegations were well-grounded and permitted an inference, based on the nature of the technology, that the John Does named in each case had acted together to download and share Plaintiff's motion pictures and are, thus, jointly and severally liable for copyright infringement under federal law.

The Court questioned the three defense counsel that appeared at the hearing as to whether they were prepared to challenge the allegations of the Complaints, and take their cases through

---

[3]Plaintiff's counsel did indicate, however, that pretrial discovery was actively being pursued in one case in Colorado.

discovery and trial.[4]   The Court noted that if the statements in the sworn declaration of John Doe #6 in Civil Action No. 12-2084 are true, then John Doe #6, as well as any other similarly-situated defendants, would not be liable and, as prevailing parties in a copyright infringement suits, would be entitled to attorney's fees and costs from Plaintiff pursuant to 17 U.S.C. § 505.

## IV.   Discussion

The five motions presently before the Court raise essentially three separate questions. First, should the motions to quash the third-party subpoenas to the ISPs be granted?  Second, is the filing of a single complaint joining multiple John Does proper, or should the Court grant the motions to sever?  And third, if the motions to quash or sever are not granted, should the Court issue a protective order to preserve the anonymity of the John Does, at least through discovery or until the time of trial?

Earlier this year, Judge McLaughlin issued a thorough opinion addressing these questions in a similar case.  See Raw Films, Ltd. v. John Does 1-15, No. 11-cv-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012).  There, Judge McLaughlin denied the John Doe defendants' motions to quash, as well as their motions for severance, and declined to enter a protective order to prevent public disclosure of their identities.  Id. at *3-*8.

It is clear from Judge McLaughlin's opinion that she relied heavily, if not completely, on the allegations in the complaint in concluding that the motions to quash should be denied and that joinder was proper, thus implying that the complaint satisfied the pleading requirements

---

[4]The Court allowed defense counsel present at the hearing time to consult with their clients as to whether they could accept service of the Complaints on their clients' behalf so that the cases could proceed to discovery.  All three defense counsel have since advised the Court that their clients did not authorize them to accept service of the Complaints.

under Rule 8 of the Federal Rules of Civil Procedure.  This Court generally agrees with Judge

McLaughlin's approach to these issues.[5]  Based on the allegations of the Complaints filed in the

instant actions, along with the supporting declaration of Mr. Fieser, the Court concludes that

there is no basis to quash the subpoenas.  As to joinder of multiple John Does in a single action,

the Court will deny the motions to sever without prejudice, as discussed below.

Here, as in Raw Films, the Complaints allege, in very general summary, that the John

Does participated in a "swarm" of computer users who successfully downloaded and shared

separate pieces of Plaintiff's motion pictures, which were eventually, by mutual or joint action,

"pieced together" so that the motion pictures were reconstituted and could be viewed, without

securing Plaintiff's permission or paying a royalty to Plaintiff.  However, unlike the instant cases,

it does not appear that any of the John Doe defendants in Raw Films, or any other third party for

that matter, had filed contrary detailed memoranda, or sworn – albeit anonymous – declarations,

asserting facts contrary to the allegations asserted in the complaint.

Following Raw Films, in a number of similar cases before judges in this District, John

Doe defendants have disputed the veracity of the allegations contained in complaints like those

here, by way of sworn declarations or other factual materials submitted to the court.  In some of

these cases, judges have quashed the subpoenas and ordered severance, requiring the plaintiff to

file new complaints against each John Doe defendant and proceed against them individually.

See, e.g., Malbu Media, LLC v. John Does 1-22, No. 12-cv-3139, ECF No. 17 (E.D. Pa. Aug. 28,

---

[5]Other judges in this District have similarly followed Judge McLaughlin's general
approach to these issues.  See, e.g., Malbu Media, LLC v. John Does 1-18, No. 12-2095, ECF
No. 25 (E.D. Pa. Sept. 27, 2012) (Davis, J.); Malbu Media, LLC v. John Does 1-15, No. 12-
2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012) (Kelly, J.).

2012) (Savage, J.); K-Beech, Inc. v. John Does 1-36, No. 11-cv-5058, ECF No. 30 (E.D. Pa. Oct. 21, 2011) (Kelly, J.); K-Beech, Inc. v. John Does 1-78, No. 11-cv-5060, ECF No. 13 (E.D. Pa. Oct. 3, 2011) (Schiller, J.).  Such decisions are within the discretion of a trial judge and do not involve the determination of substantive issues in a given case.

###    A.    Motions to Quash Third-Party Subpoenas

In the instant cases, those John Does who have moved to quash the third-party subpoenas served on the ISPs raise one or both of the following contentions: (i) that the third-party subpoenas subject them to undue burden, and (ii) that their right to remain anonymous outweighs any potential proprietary interest that Plaintiff may have in the copyrights at issue and, thus, its right to discovery.

The Court is unaware of any judge in this District that has gone so far as to quash a third-party subpoena similar to those at issue here for the reasons advanced by the John Does.  Indeed, it appears that those judges in this District who have quashed such subpoenas have done so simply to facilitate the severance of John Doe defendants without ruling on the merits of the motions to quash.  See, e.g., K-Beech, Inc. v. John Does 1-36, No. 11-cv-5058, ECF No. 30 (E.D. Pa. Oct. 21, 2011) (Kelly, J.) (granting motions to quash filed by all severed John Doe defendants, but denying motion to quash filed by remaining John Doe defendant); K-Beech, Inc. v. John Does 1-78, No. 11-cv-5060, ECF No. 13 (E.D. Pa. Oct. 3, 2011) (Schiller, J.) (same). But cf. Patrick Collins, Inc. v. John Does 1-26, 843 F. Supp. 2d 565 (E.D. Pa. 2011) (granting motion to quash where plaintiff did not hold a valid copyright in the motion picture at issue). However, judges in other districts have found it appropriate to quash third-party subpoenas for the reasons advanced by the John Does here.  See, e.g., In re BitTorrent Adult Film Copyright

Infringement Cases, Nos. 11-cv-3995, 12-cv-1147, 12-cv-1150, 12-cv-1154, 2012 WL 1570765
(E.D.N.Y. May 1, 2012).

1. Undue Burden

Rule 45(c) of the Federal Rules of Civil Procedure provides that a court must quash or
modify a subpoena under certain circumstances, including when it "subjects a person to undue
burden." Fed. R. Civ. P. 45(c)(3). "Proceeding with discovery to obtain the identity of Doe
defendants so that they may be served is proper and within the scope of permissible discovery."
Raw Films, 2012 WL 1019067, at *6; see also Blakeslee v. Clinton Cnty., 336 F. App'x 248, 250
(3d Cir. 2009) ("Use of John Doe defendants is permissible in certain situations until reasonable
discovery permits the true defendants to be identified. If reasonable discovery does not unveil
the proper identities, however, the John Doe defendants must be dismissed." (citations omitted)).

The Court rejects the assertion that the third-party subpoenas served on the ISPs would
subject the John Does to undue burden. Notably, the subpoenas are addressed to third parties –
the ISPs, not the John Does.[6] The ISPs have not objected to the subpoenas, nor would any
objection by them have much chance of success because, as Plaintiff correctly observes, federal
law requires an ISP to provide information as to the identity of a subscriber upon proper legal
process. See 47 U.S.C. § 551(c)(2)(B). Thus, the only consequence of serving the subpoenas is
that Plaintiff will receive information identifying the ISP subscribers associated with the
allegedly infringing IP addresses as set forth in Exhibit A to the Complaints. As discussed
below, the Court will order that this information be treated confidentially and that the subscribers

---

[6]Plaintiff, however, does not object to the John Does' contention that they have standing
to challenge the third-party subpoenas served on the ISPs.

be given the benefits of anonymity in all further proceedings until further order of the Court.

The Court finds good cause for ordering such discovery because Plaintiff has demonstrated that a subpoena seeking the subscriber information associated with allegedly infringing IP addresses is possibly the only way for Plaintiff to identify the proper defendants in these cases and proceed with its claims against them.  The Court acknowledges, however, that the information provided by the ISPs in response to the subpoenas will not necessarily reveal the identities of the actual infringers, but may, with other discovery, lead to the infringers' identities.  As Judge McLaughlin observed in Raw Films, it "may be that a third party used that subscriber's IP address to commit the infringement alleged," but this possibility is not a cognizable basis on which to quash an otherwise proper subpoena.  2012 WL 1019067, at *6 n.3.

2.    Right to Remain Anonymous

The First Amendment of the United States Constitution "protects the right to engage in anonymous communication, and that protection extends to the Internet."  Raw Films, 2012 WL 1019067, at *6 (citing Reno v. ACLU, 521 U.S. 844, 870 (1997)).  "The First Amendment is implicated by civil subpoenas seeking the identity of anonymous individuals."  Id. (citing NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 462 (1958)).

The Third Circuit has not set forth a test for weighing the necessity for discovery against the right to engage in anonymous speech. The Second Circuit is apparently the only federal appellate court to articulate and utilize such a test.  The Second Circuit's standard requires balancing five principal factors:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the]

12

need for the subpoenaed information to advance the claim, . . . and (5) the
[objecting] party's expectation of privacy.

Arista Records, LLC, v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010) (alterations in original)

(quoting Sony Music Enter., Inc. v. Does 1-40, 326 F. Supp. 2d 556, 564-65 (S.D.N.Y. 2004)).

Numerous courts throughout the country have applied this standard.  See Raw Films, 2012 WL

1019067, at *6 n.6 (collecting cases).  In the absence of contrary case law, the Court finds this

standard to be an appropriate means of balancing the competing interests at stake in these cases.

Here, the John Does concede that all but two of the foregoing factors – those relating to

the specificity of the discovery requests and their expectation of privacy – are satisfied.  As to the

specificity factor, the third-party subpoenas seek the contact information of the subscribers

associated with the specific IP addresses identified in Exhibit A to each Complaint.  As discussed

above, the subpoenas also identify the city in which each IP address is located, the date and time

of the infringing activity associated with the address, and the ISP of the address.  "Again,

although the provision of this information may not directly identify the proper defendants, it is

sufficiently tailored to lead to the identification of those individuals."  Raw Films, 2012 WL

1019067, at *7.

With respect to the John Does' expectation of privacy, the Court finds that any detriment

to this interest is mitigated by granting their request to proceed anonymously.  It bears emphasis

that the Court is proceeding in an abundance of caution.  The record suggests that the motion

pictures at issue are pornographic in nature.  The John Does might thus be subject to public

embarrassment upon the disclosure of the fact that their IP addresses were used to download

pornographic material.  As discussed above, although the disclosure of subscriber information

13

may not reveal the actual infringers in these cases, it may nevertheless allow Plaintiff to identify

the actual infringers.  Further, pornography is rampant on the internet for free, and no crime has

been committed as long as the pornography is exclusively adult pornography.  There is no

suggestion of any child pornography in these cases.  Thus, the incidence of adult pornography

being downloaded onto someone's computer is not earth shattering in this day and age, although

it can be obscene and embarrassing to many people.  Accordingly, as discussed more fully below,

the Court will enter a protective order to prevent the public disclosure of the identities of the

John Does throughout pretrial proceedings.

**B.     Motions to Sever**

Currently, in similar cases throughout the country, there is a split among district judges as

to whether joinder of multiple John Doe defendants is proper.  See, e.g., Raw Films, 2012 WL

1019067, at *4 (collecting cases).  There is even a split among district courts within this District

itself on this issue.   Compare, e.g., id. at *4-*5 (McLaughlin, J.) (finding joinder proper), and

Malibu Media, LLC v. John Does 1-15, No. 12-cv-2077, 2012 WL 3089383 (E.D. Pa. July 30,

2012) (Kelly, J.) (same), with Patrick Collins Inc. v. John Does 1-35, 11-cv-5172, ECF No. 36

(E.D. Pa. Dec. 29, 2011) (Savage, J.) (finding joinder improper), and K-Beech, Inc. v. John Does

1-78, No. 11-cv-5060, ECF No. 13 (E.D. Pa. Oct. 3, 2011) (Schiller, J.) (same).[7]

---

[7] The Court notes that certain judges in this District have reached different conclusions as
to whether joinder is proper in different BitTorrent cases before them.  Compare, e.g., K-Beech,
Inc. v. John Does 1-36, No. 11-cv-5058, ECF No. 30 (E.D. Pa. Oct. 21, 2011) (Kelly, J.) (finding
joinder improper), and K-Beech, Inc. v. John Does 1-78, No. 11-cv-5060, ECF No. 13 (E.D. Pa.
Oct. 3, 2011) (Schiller, J.) (same), with Malibu Media, LLC v. John Does 1-15, No. 12-cv-2077,
2012 WL 3089383 (E.D. Pa. July 30, 2012) (Kelly, J.) (finding joinder proper), and Malibu
Media, LLC v. John Does 1-15, No. 12-cv-2090, ECF No. 13 (E.D. Pa. June 28, 2012) (Schiller,
J.) (same).

Rule 20(a) of the Federal Rules of Civil Procedure, which governs permissive joinder of parties, provides in pertinent part:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). For courts applying Rule 20, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." Hagan v. Rogers, 570 F.3d 146, 153 (3d Cir. 2009) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966)). However, even if the literal requirements of Rule 20 are met, a district court nevertheless maintains the discretion to sever defendants if it finds that the objectives of the rule in promoting trial convenience are not fostered, or that joinder would result in prejudice, expense or delay. Raw Films, 2012 WL 1019067, at *3; see also Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

Those judges in this and other districts who have exercised their discretion to sever John Doe defendants in similar BitTorrent cases have generally done so for practical reasons, including, but not limited to the following: (i) the likelihood that each John Doe defendant will assert different defenses, thereby adding factual and legal questions that are not common among all defendants, (ii) many John Doe defendants are proceeding pro se, and will therefore incur significant expense serving papers and attending depositions of all other parties to the lawsuit, (iii) the likelihood that many of the John Doe defendants are not the actual individuals who illegally downloaded the motion pictures in question, (iv) the likelihood that joinder will

15

facilitate coercive settlements among the John Doe defendants; and (v) plaintiff's avoidance of paying filing fees by pursuing mass actions.[8]  See, e.g., Malbu Media, LLC v. John Does 1-22, No. 12-cv-3139, ECF No. 17 (E.D. Pa. Aug. 28, 2012) (Savage, J.); Next Phase Distrib., Inc. v. John Does 1-27, No. 12-cv-3755(VM), 2012 WL 3117182 (S.D.N.Y. July 31, 2012); Digital Sins, Inc. v. John Does 1-245, No. 11-cv-8170(CM), 2012 WL 1744838 (S.D.N.Y. May 15, 2012); In re BitTorrent Adult Film Copyright Infringement Cases, Nos. 11-cv-3995, 12-cv-1147, 12-cv-1150, 12-cv-1154, 2012 WL 1570765 (E.D.N.Y. May 1, 2012).

Considering these factors, and balancing Plaintiff's interest in resolving its claims against the John Does' interest in avoiding annoyance or undue burden in litigating these cases, the Court will deny the motions to sever at this time without prejudice.   However, as discussed more fully below, the Court will order that the proceedings be stayed until further order of the Court against all John Doe defendants except those five John Does who have filed the pending motions before the Court.  Depending on the results of the anticipated proceedings outlined below, the Court will consider whether the other John Does should be severed at some future time, either upon a motion or sua sponte.

In reaching this conclusion, the Court acknowledges that while Plaintiff's strategy – as

---

[8]In exercising its discretion to grant severance, at least one court has relied, albeit in part, on the possibility that a motion picture considered obscene may not be eligible for copyright protection.  See Next Phase Distrib., Inc. v. John Does 1-27, No. 12-cv-3755(VM), 2012 WL 3117182, at *6 (S.D.N.Y. July 31, 2012).  Neither the Supreme Court nor the Third Circuit has addressed whether pornography is eligible for copyright protection.  However, other circuits that have addressed the issue have either determined or endorsed the view that the copyright laws are not content-based, and thus pornography is indeed eligible for copyright protection.  See Mitchell Bros. Film Grp. v. Cinema Adult Theatre, 604 F.2d 852, 862-63 (5th Cir. 1979); Jartech, Inc. v. Clancy, 666 F.2d 403, 406 (9th Cir. 1982); Flava Works, Inc. v. Gunter, 689 F.3d 754, 755-56 (7th Cir. 2012); cf., e.g., Gilliam v. Am. Broad. Cos., 538 F.2d 14, 23 (2d Cir. 1976) (suggesting that non-pornographic obscene material is eligible for copyright protection).

articulated by counsel at the September 18, 2012 hearing on the pending motions – may sound

rational on a superficial level, the joinder of multiple John Doe defendants could very well lead

to litigation abuses.  The purpose of the joinder rules is to promote efficiency, not to use federal

district courts as small claims collection agencies, by putting economic pressure on individuals

who do not have substantive liability.  Although the Court declines to grant the John Does'

motions to sever at this time, the Court seconds the perceptive observations made by Judge

Colleen McMahon in a similar BitTorrent case:  "I am second to none in my dismay at the theft

of copyrighted material that occurs every day on the internet.  However, there is a right way and a

wrong way to litigate, and so far this way strikes me as the wrong way."  Digital Sins, Inc. v.

John Does 1-245, No. 11-cv-8170(CM), 2012 WL 1744838, at *8 (S.D.N.Y. May 15, 2012).

The procedures which the Court will adopt below are designed to be fair to both Plaintiff

and the John Does, and to provide a level playing field for the resolution of these cases, which

may lead to wider application once the true facts are established and the legal issues are decided.

Although the Court cannot prevent the parties from settling these claims, the Court

assumes that Plaintiff will welcome this opportunity to prove its claims promptly pursuant to the

Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the copyright laws, which

may, if Plaintiff is successful, lead to an injunction enjoining the practices about which Plaintiff

complains.   If Plaintiff decides instead to continue to "pick off" individual John Does, for

confidential settlements, the Court may draw an inference that Plaintiff is not serious about

proving its claims, or is unable to do so.

### C.    Protective Order

In the alternative to their motions to quash and/or sever, the John Does seek a protective

order to prevent the public disclosure of their identities.  Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ."  Fed. R. Civ. P. 26(c)(1).

Here, Plaintiff does not object to the issuance of a protective order to prevent the public disclosure of the John Does' identities.  However, Plaintiff does contend that any protective order should only prevent the disclosure of the moving Does' identities until trial and/or judgment is entered.  The Court is always open to consider modification of a protective order.

For the reasons stated above, the Court finds that good cause exists to issue a protective order requiring that all parties refer to the defendants in this case by his or her John Doe number in any matters filed of record until further order of the Court.  As necessary, the identity of a particular John Doe defendant shall be disclosed to other parties in discovery, and may be disclosed as part of <u>in camera</u> submissions to the Court.

### D.   Anticipated Further Proceedings: Bellwether Trial

After considering numerous other judicial decisions, and for reasons stated on the record at the September 18, 2012 hearing, the Court concludes that the best way to proceed in this case is to establish a procedure for a prompt trial with Plaintiff proceeding against the five moving John Does in these actions as defendants in a "Bellwether" trial.[9]  All proceedings against the

---

[9]Bellwether trials have long been recognized as an effective means of enhancing prospects of settlement or for resolving common issues or claims in complex litigations.  <u>See, e.g.</u>, <u>In re Chevron U.S.A., Inc.</u>, 109 F.3d 1016, 1019-20 (5th Cir. 1997) ("[T]he results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by jury verdicts.  Common issues or even general liability may also be resolved in a bellwether context in appropriate cases.").  The term "bellwether" is "derived from the ancient practice of belling a wether (a male sheep) selected to lead his flock.

remaining John Does will be stayed until further order of the Court.

The Court recognizes that litigating these cases may impose a burden on these five John Does moving forward, but, as is true in almost all litigation, no individual enjoys being sued. Our justice system allows plaintiffs who have made allegations in accordance with procedural rules and substantive law, as Plaintiff has done here, to proceed with their cases.

The Court also acknowledges that the five John Does who will be defendants in the Bellwether trial are, in a sense, being penalized for filing motions challenging the third-party subpoenas presently at issue, given that all proceedings against the remaining John Does will be stayed until further order of the Court. In the Court's view, however, under the present circumstances, this is the fairest and most efficient means of resolving these actions. These defendants have objected to Plaintiff's strategy and two of them have filed declarations asserting that Plaintiff's claims are false. A Bellwether trial is the best means of testing the viability of Plaintiff's claims, as well as Plaintiff's sincerity in pursuing them.[10]

In the event Plaintiff's allegations cannot be sustained, the five John Does will have

---

The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray . . . ." Id. at 1019. For extended discussions of the advantages and uses of bellwether trials, see, e.g., DAVID F. HERR, MANUAL FOR COMPLEX LITIGATION § 22.315 (4th ed. 2012); Eldon E. Fallon, et al., Bellwether Trials in Multidistrict Litigation, 82 TUL. L. REV. 2323 (2008); Alexandra D. Lahav, Bellwether Trials, 76 GEO. WASH. L. REV. 576 (2008).

[10]Another advantage of proceeding with a Bellwether trial is that, if Plaintiff is successful, the Court may grant Plaintiff's request for an injunction that could be applied more broadly, as facts may warrant. Plaintiff may also seek a preliminary injunction, which would allow a prompt evidentiary hearing on some issues, including the merits of Plaintiff's claims. See generally Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 124, 1254 (3d Cir. 1983) (noting the "prevailing view that a showing of a prima facie case of copyright infringement or reasonable likelihood of success on the merits" is sufficient to obtain preliminary injunctive relief).

adequate remedies to recover most, if not all, of these litigation expenses and/or damages from Plaintiff, such as a Rule 54 motion for costs, a lawsuit for abuse of civil process, a Rule 11 motion for sanctions, and a motion to recover excessive costs under 28 USC § 1927.  More fundamentally, as mentioned above, because this is a copyright case, a successful defense will likely result in an award of attorney's fees to any John Doe who prevails under 17 U.S.C. § 505.

The Court will also fully consider, at the appropriate time, allocating the cost of discovery in a fair manner so that there is no undue burden on the five John Does, if the facts so warrant. The Court assumes the defendants and their counsel will enter into a joint defense agreement to share work and expenses, and perhaps, if necessary, solicit others with interest in the outcome of these cases, for financial support.

The Court cannot ignore Plaintiff's allegations of copyright infringement.  The arguments made by counsel for Plaintiff at the hearing set forth a coherent theory of liability under the copyright laws.  The defendants' factual materials and memoranda in support of their motions dispute this theory.  The Court cannot decide substantive issues on these conflicting documents. Discovery and, ultimately, a trial are necessary to find the truth.

The five John Does who will be defendants in the Bellwether trial may proceed anonymously, but at some point they will be required to submit to depositions where Plaintiff will have the right to cross-examine them on the allegations made in the Complaints, the factual assertions made in any materials filed in support of their motions, and/or statements submitted of record.

In this case, the Court will require that the pleadings be completed promptly and will enter an order which provides for discovery to start without delay and be completed

expeditiously so the case can proceed to final disposition on the merits, within six months.

An appropriate Order follows.

O:\CIVIL 12\12-2078 Malibu Media v. John Does 1-16\12cv2078.12cv2084.12cv.2088.memo.10.3.12 .wpd