IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MALIBU MEDIA, LLC <br> & <br> PATRCIK COLLINS, INC. <br>        Plaintiffs <br> <br> v. <br> <br> JOHN DOES 1 – 14, <br>        Defendants | Civil No.: 2:12-cv-02084-MMB <br> <br> <br> <br> <br> <br> Hon. Michael M. Baylson |

**BRIEF IN SUPPORT OF DEFENDANT JOHN DOE SIX' MOTION TO DISMISS**

COMES NOW Defendant John Doe 6, by and through counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(1), files this Brief in Support of his Motion to Dismiss, and respectfully submits to the Court as follows:

I. **INTRODUCTION**

Plaintiffs are pornographers, producers of videos such as *Carlie: Beautiful Blowjob* and *Big Wet Asses 21*. This case commenced with the filing of a complaint by Malibu Media, LLC ("Malibu") against 14 John Does. On November 2, 2012, an amended complaint was filed by Malibu, and also by a new plaintiff, Patrick Collins, Inc. ("Collins")[1]. The amended complaint lists six pornographic videos allegedly downloaded via the BitTorrent protocol — five videos, the copyrights for which are purportedly owned by Malibu, and one purportedly owned by Collins.

John Doe 6 objects to the amended complaint and moves under Rule 12(b)(1) to dismiss certain counts because Malibu lacks Article III standing to proceed, as it does

---

1  John Doe 6 objects to adding Collins as a plaintiff in this manner, and will address those objections further by separate motion.

not hold the copyrights for several of the works. John Doe 6 moves to dismiss the entire amended complaint for lack of standing under Rule 12(b)(1) because neither Malibu nor Collins have obtained the required Certificate of Authority required to bring suit in Pennsylvania under 15 Pa.C.S.A. §4141.

## II. CERTAIN COUNTS OF INFRINGEMENT BY MALIBU MEDIA MUST BE DISMISSED FOR LACK OF STANDING, AS MALIBU IS NOT PROPERLY THE COPYRIGHT HOLDER.

Malibu Media lacks standing to proceed on certain of the counts of infringement due to a defect in the registrations. Specifically, Malibu did not have a corporate existence on the date of creation of these videos, yet registered them well after the fact as "works for hire." According the California Department of State, Malibu was formed as an LLC on February 8, 2011. See screenshot of California Dept. of State website, attached hereto as Exhibit A.

However, the registration records obtained from the Copyright Office's web site, and attached as exhibits to the Amended Complaint show that:

| Title | Date of First Publication | Date of Registration |
|---|---|---|
| *Carlie: Beautiful Blowjob* | 03/26/10 | 11/21/11 |
| *Kristen: Girl Next Door* | 08/25/10 | 11/18/11 |
| *Tiffany: Teenagers in Love* | 12/29/10 | 11/20/11 |

*See* Amended Complaint, Doc. No. 39, Exhibit A.

Clearly, these works were in existence prior to Malibu's corporate formation. The registrations filed with the Copyright Office do not reflect how Malibu acquired its interest in the copyrights, nor who held them previously. This precise issue was raised in a Malibu Media case currently pending in the Eastern District of Michigan, *Malibu Media, LLC v. John Does 1 – 13*, 12-cv-12586 (E.D. Mich. 2012).

The first, most basic element in any copyright case, and the one necessary to establish

standing to sue is "ownership of a valid copyright." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Under the Copyright Act of 1976, ownership of the copyright vests in the author of the work. 17 U.S.C. §201; *see Community Center for Creative Non-violence v. Reid*, 490 U.S. 730, 737 (1989). The author is the person "who actually creates the work...." *Reid*, 490 U.S. at 737.

It is well-settled that the inquiry into a litigant's standing to bring suit involves an examination of both constitutional and prudential restrictions. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). It has been stated that the standing requirements exist in tandem with "the immutable requirements of Article III," *ACORN v. Fowler*, 178 F.3d 350, 362 (5th Cir. 1999), as an integral part of "judicial self-government," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560- 61 (1992). The goal of this self-governance is to determine whether the plaintiff "is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Bender v. Williamsport Area School District*, 475 U.S. 534, 546 n.8 (1986). Indeed, the United States Supreme Court has consistently stated that standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. at 498.

In this case, Malibu Media did not exist when the videos were produced. Therefore it cannot be the author, nor can it have been an employer for hire. Upon being presented with this information in a case pending in the Eastern District of Michigan, Malibu attempted to correct the registrations by after-the-fact assignments from Malibu's co-owner Brigham Field to Malibu. These assignments, however, are undated, and were not filed until well after the litigation in that case began. *See* Putative Copyright Assignments, attached hereto as Exhibit B.

    A.    **Malibu is not the owner of the copyrights at issue.**

Based on the foregoing it is apparent that Malibu does not, in fact, hold a valid

copyright on the three videos referenced above. In its simplest form, Malibu was not alive when the videos were created — it had no capacity to hire anyone prior to its corporate existence, and thus cannot be an employer for hire. Finally, the putative assignments are both (1) prohibited by Copyright Office regulations, and (2) do not include the specific right to sue for past infringements. Moreover, an after-the-fact assignment cannot create standing which did not already exist. *Righthaven, LLC v. Democratic Underground, LLC*, 791 F.Supp.2d 968, 974 (D. Nev. 2011), *quoting Lujan*, 504 U.S. at 571. Therefore, Malibu lacks standing to sue over any alleged infringements relating to those videos, and those counts must be dismissed.

1. **Malibu cannot be an employer-for-hire.**

It is axiomatic that before a business entity is formed, it does not exist. It is also axiomatic that before a business entity exists, it can hold no property, employ no workers, receive no monies, nor shoot a video. At risk of sounding philosophical, a thing that does not exist cannot do anything.

When Malibu came into corporate being on February 8, 2011, a lone pornographer named Brigham Field practiced his "craft" as a sole proprietor. Under the Copyright Act, Mr. Field is deemed the author of the works in question, because he "actually create[d] the work, that is, [he] translate[d] an idea into a fixed, tangible expression entitled to copyright protection." *Reid*, 490 U.S. at 737. He did not, however, register his "works" with the Copyright Office[2]. The creation of a copyright interest vests automatically. Registration is voluntary, and is not a condition of copyright protection — registration *is* a prerequisite to suing for infringement, however. *Kernel Records Oy v. Mosley*, ___ F.3d ___ (11th Cir. 2012) (approved for publication, attached hereto as Exhibit C).

When Malibu was formed by Mr. Field and his wife Colette[3] on February 8, 2011,

---
2  A search of Copyright Office records reveals that Brigham Field is not the registered owner of any copyrights.
3  Ownership of Malibu Media by Mr. and Mrs. Field was admitted by Malibu's Michigan counsel in the

4

therefore, all the videos that had been produced by Mr. Field remained his intellectual property. When Malibu began registering the works with the Copyright Office, it failed to note both (1) that Brigham Field previously held the automatic copyright, and (2) whether that automatic copyright had ever been assigned to Malibu. These were required to be included in the registration applications submitted to the Copyright Office. 17 U.S.C. § 409(5). The failure to so include this information not only invalidates the copyright, the alleged copyright in question is "incapable of supporting an infringement action." *Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452, 456 (2d Cir.1989).

Accordingly, as the works were created prior to Malibu's corporate formation, Brigham Field holds the copyrights for the videos in question.

### 2. The after-the-fact assignments do not cure the defect.

After the questionable registrations were noted in the Michigan case, Malibu tried to cure the problem by producing a series of assignments purporting to transfer "all of Assignor's [Mr. Field] right, title, and interest in and to the copyrights" for the videos in question. *See* Exhibit B. The assignment is, in fact, defective and will not fix the problems inherent in the registrations.

Moreover, Malibu has filed Copyright Office Form CA Supplemental Registrations in an effort to stave off its inevitable defeat. *See* Supplemental Registrations, attached hereto as Exhibit D. Each of these Supplemental Registrations explicitly states:

> "This particular work was created by Brigham Field and was transferred through an assignment of copyright to Malibu Media, LLC after the company was formed and was not originally created as a work for hire.
> Brigham Field's current arrangement with Malibu

---

Michigan case, and the Court may properly take judicial notice of same.

>   Media, LLC is that movies he creates are a work for hire and owned by Malibu Media, LLC. The agreement is in writing. When he instructed his agent to register this Work, he mistakenly told his agent to register this work as a work for hire Authored by Malibu Media, LLC."

These Supplemental Registrations do not fix the problem. To begin, Copyright Office regulations prohibit a supplemental registration that purports to "to reflect a change in ownership that occurred on or after the effective date of the basic registration or to reflect the division, allocation, licensing or transfer of rights in a work." 37 C.F.R. 201.5(b)(2)(iii)(A). The purported supplemental registrations violate both clauses of the disjunctive — the very language of the application states that there was a change in ownership after the effective date of the basic registration and a transfer of rights in a work.[4]

In short, the registrations for the three videos in question are fatally defective. Malibu is not the owner of the copyrights in question. Their efforts to fix the problem Therefore, they lack standing to sue for the alleged infringements of those videos.

### B. Even if Malibu is the owner of the copyrights, the assignment did not transfer the right to sue for past infringements.

Assuming *arguendo* that the assignments and supplemental registrations referenced above are valid, Malibu nevertheless lacks standing because the assignments do not specifically include the right to sue for past infringements. According to the amended complaint, the alleged infringements for *Carlie: Beautiful Blowjob* and *Tiffany: Teenagers in Love* both occurred on February 4, 2012; the alleged infringement for *Kristen: Girl Next Door* occurred on February 12, 2012. The putative assignments are undated, but the application for Supplemental Registrations were filed on September 13, 2012 — about seven months later.

Here, the law is clear — what the Plaintiff is trying to do is illegal. The right to sue for

---

[4] The Doe defendants in the Michigan case have petitioned the Copyright Office to invalidate Malibu's registrations.

infringements that may have arisen prior to an assignee's interest in the copyright must be explicit in the assignment agreement. *Righthaven, LLC v. Hoehn*, 792 F.Supp.2d 1138, 1145 (D. Nev. 2011), *citing Silvers v. Sony Pictures Entm't, Inc.,* 402 F.3d 881, 884 (9th Cir. 2005).

The *Righthaven* cases are informative. Righthaven was a company whose business model amounted to purchasing the right to sue for infringements. Accordingly, a vast flurry of suits were filed in the Districts of Nevada and Colorado, primarily over comments posted to blogs and websites that featured snippets of content. *See Hoehn*, 792 F.Supp.2d 1141-45. Righthaven then filed 284 actions alleging copyright infringement.

However, two issues emerged in the course of Righthaven's assault on content users — first, it became apparent that Righthaven did not actually purchase the copyright to the content, but only the right to sue. Second, even when Righthaven tried to correct the situation and purported to purchase the copyrights, it failed to secure the right to sue for past infringements. In the cases that resulted in rulings on the merits, Righthaven lost every single one. Steve Green, *Missing Righthaven attorney surfaces, airs grievances about company*, *Las Vegas Sun*, October 3, 2012, found online at http://www.lasvegassun.com/news/2012/oct/03/missing-righthaven-attorney-surfaces-airs-grievanc/ (visited November 16, 2012).

Like the *Righthaven* cases, the assignment from Mr. Field to Malibu is lacking the crucial language that empowers Malibu to sue for the alleged past infringements at issue. If the assignments are valid — and that is a substantial if — it nevertheless leaves Malibu out in the cold. Malibu simply lacks standing to sue for these videos.

Furthermore, it is well settled that standing must exist at the initiation of the case. *Democratic Underground*, 791 F.Supp.2d at 974; *Lujan*, 504 U.S. at 571. A standing defect is jurisdictional in nature and cannot be corrected midstream. The putative assignments and

7

Supplemental Registrations cannot and do not correct the fact that at the time the case was filed, Malibu was not the lawful owner of the copyrights in question, and therefore do not have standing to sue for those alleged infringements.

WHEREFORE, John Doe 6 respectfully requests this honorable Court to dismiss the counts relating to the videos *Carlie: Beautiful Blowjob, Tiffany: Teenagers in Love*, and *Kristen: Girl Next Door* due to Malibu's lack of standing with respect to those videos.

### III. THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE NEITHER PLAINTIFF HAS OBTAINED THE NECESSARY CERTIFICATE OF AUTHORITY FROM THE PENNSYLVANIA DEPARTMENT OF STATE.

Pennsylvania law requires foreign corporations to obtain a certificate of authority to do business in the Commonwealth prior to availing themselves of the courts here. Sections 4141 (applying to foreign corporations) of the Pennsylvania corporations law states "A nonqualified foreign business corporation doing business in this Commonwealth… shall not be permitted to maintain any action or proceeding in any court of this Commonwealth until the corporation has obtained a certificate of authority….." 15 Pa.C.S.A. §4141(a). *See Information Services Systems, Inc. v. Platt*, 953 A.2d 1244 (Pa. 2008) (holding that even an involuntarily dissolved foreign corporation must first obtain a certificate of authority prior to filing suit). Section 8587 (applying to foreign LLCs and Limited Partnerships) states "A nonqualified foreign limited partnership doing business in this Commonwealth may not maintain any action or proceeding in any court of this Commonwealth until it has registered under this subchapter…." 15 Pa.C.S.A. §8587(a); *see also Dague v. Huddler and Mobility Rehab Products, LLC*, 5:07-cv-5539 (E.D. Pa. 2008) (holding that analysis of unregistered LLC under §8587 is identical to analysis of unregistered corporation under §4141) (attached hereto as Exhibit E).

These statutes have been applied to unregistered foreign corporations in Federal court.

8

*See Dague*, supra; *see also Empire Excavating Co. v. Maret Development Corp.*, 370 F. Supp. 824, 825 (W.D. Pa. 1976).

In the present matter, a review of publicly available records with the Pennsylvania Department of State reveal that neither Malibu nor Collins has registered with the Commonwealth, nor obtained a certificate of authority. Therefore, they are barred from availing themselves of relief in our courts.

WHEREFORE, Defendant John Doe 6 respectfully requests that the Court enter an order dismissing the Amended Complaint on the basis that Sections 4141 and 8587 prohibit the plaintiffs from seeking relief in the courts of Pennsylvania.

Respectfully submitted,

/S/ CHARLES THOMAS, JR.
Charles Thomas, Jr., Esq.
Attorney for John Doe 6

Charles Thomas, Jr., Esq.
The Thomas Firm
117 West Gay Street
Suite 316
West Chester, PA 19380
877-397-3003
ct@thomastrials.com
Attorney ID: 89781

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he filed the foregoing Motion to Dismiss on November 16, 2012 via the Court's CM/ECF filing system, thereby serving all parties of record.

                              Respectfully submitted,

                              /S/ CHARLES THOMAS, JR.
                              Charles Thomas, Jr., Esq.