**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

```
-----------------------------------------------------------------X
                                                :
 MALIBU MEDIA, LLC,                             :
                                                :      Civil Action No. 2:12-cv-02084-MMB
                            Plaintiff,          :
                                                :
                 vs.                            :
                                                :
 JOHN DOE 6,                                    :
                                                :
                            Defendants.         :
                                                :
-----------------------------------------------------------------X
```

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT**
**JOHN DOE SIX'S MOTION TO DISMISS [CM/ECF 42]**

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................................4

II.   FACTS ................................................................................................................................4

      A.    The Fields Created Plaintiff's Business ..................................................................4

      B.    Malibu Media Owns Its Copyrights.......................................................................5

      C.    Malibu Media Wants the Infringement to Stop ......................................................6

      D.    John Doe 6 Repetitively Stole Five (5) of Plaintiff's Films Over Five (5) Months.............7

III.  LEGAL STANDARD.........................................................................................................8

IV.   ARGUMENT ......................................................................................................................9

      A.    Malibu Media is the Owner Of the Copyrights and Has Standing to Assert Its Claim........9

          1.    Copyright Policy Provides For Correction of Mistakes on Registrations ................9

          2.    Defendant Misconstrues the Facts .......................................................................11

          3.    The Assignments Are Not After the Fact...............................................................13

          4.    Defendant Lacks Standing to Challenge Plaintiff's Assignment as a Third Party Infringer......................................................................................................14

          5.    The Right to Sue for Past Infringements Is Irrelevant...........................................15

      B.    Defendant's Argument That Plaintiff Lacks Capacity to Sue is Wrong ..........................16

V.    CONCLUSION .................................................................................................................18

## TABLE OF AUTHORITIES

*Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1531 (11th Cir. 1994) ........10

*Basketball Mktg. Co., Inc. v. Steve & Barry's Univ. Sportswear*, CIV.A. 07-716, 2008 WL 5586141 (E.D. Pa. 2008) .......................................................................................14

*Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591, 592-93 (7th Cir. 2003). 9, 13, 14, 15, 16

*Compendium II: Compendium of Copyright Office Practices* § 1507.5(c) (1984) .....................11

*Dague v. Huddler*, 2008 WL 4444266 (E.D. Pa. 2008)............................................................17

*Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982) ...........14, 16

*Gallup, Inc. v. Kenexa Corp.*, 149 Fed. Appx. 94, 96 (3d Cir. 2005)...........................................9

*Infodek, Inc. v. Meredith-Webb Printing Co., Inc.*, 830 F. Supp. 614, 620 (N.D. Ga. 1993) .......16

*Intimo, Inc. v. Briefly Stated, Inc.,* 948 F. Supp. 315, 317-18 (S.D.N.Y. 1996).....................14, 16

*Jules Jordan Video, Inc. v. 144942 Canada Inc.,* 617 F.3d 1146, 1156 (9th Cir. 2010) .... 9, 14, 16

*Liebeskind v. Alliance Title Co.*, 2008 WL 160954 (N.D. Cal. 2008) .........................................18

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).....................................................8

*Meinman v. Kenton County, Ky.*, 2011 WL 721478, at *10 n.9 (E.D. Ky. 2011) .........................9

*Morelli v. Tiffany and Co.,* 186 F.Supp.2d 563, 565-66 (E.D.Pa.2002) ..................................9, 10

*National Wildlife Federation v. Agricultural Stabilization and Conservation Service*, 901 F.2d 673, 677 (8th Cir. 1990)..........................................................................................8

*Nichols v. Muskingum Coll.,* 318 F.3d 674, 677 (6th Cir. 2003).................................................8

*Nimmer on Copyright,* § 7.20, at 7-197 & 198 (1990)...............................................................9

*Rottlund Co., Inc. v. Pinnacle Corp.*, 2004 WL 1879983 (D. Minn. 2004).................................14

*Thomas Wilson & Co. v. Irving J. Dorfman Co.*, 433 F.2d 409, 412 (2d Cir. 1970)...................10

*Typh, Inc. v. Typhoon Fence of Pa., Inc.*, 461 F.Supp. 994, 996-997 (D.C.Pa.1978) .................17

*United States v. SCRAP*, 412 U.S. 669, 689, 93 S.Ct. 2405, 2416-17 (1973)...............................8

*Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).......................8

*Whimsicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d 452, 456 (2d Cir. 1989) ..............11, 12

*Whitmore v. Arkansas,* 495 U.S. 149, 154-155 (1990) ...............................................................8

## I.   INTRODUCTION

Each of John Doe 6's arguments runs afoul of well-established law and the facts and should be rejected.  Defendant first argues that Malibu Media, LLC ("Malibu Media") lacks standing to sue because of a technical error in its registration.  This argument has been expressly rejected by three Circuit Courts and should be again here.  Moreover, Defendant does not even have standing to make the argument.  Defendant also erroneously argues that Plaintiff lacks capacity to sue because it is a foreign corporation that does not have a certificate of authority to transact business in the Commonwealth.  First, Malibu Media mooted this section of Defendant's motion by obtaining a Certificate of Authority to Transact Business.  *See* Exhibit A.  Second, Plaintiff has never transacted business in Pennsylvania within the meaning of 15 Pa.C.S.A. §4141(a).  Therefore, Plaintiff did not need to obtain a Certificate of Authority.

For these reasons, as more fully explained below, the Court should deny John Doe 6's motion to dismiss.

## II.   FACTS

### A.   The Fields Created Plaintiff's Business

Colette Pelissier Field, with her husband Brigham Field, began their business from scratch.  Field Declaration at ¶ 3 (Exhibit A).  Ms. Field was a real estate agent and Mr. Field was a photographer.  *Id*. at ¶ 4.  When the real estate market started heading south, Ms. Field knew she and her husband needed to start a business together.  *Id*. at ¶ 5.  The Fields both felt that there was a lack of adult content that was beautiful and acceptable for women and couples. *Id*. at ¶ 6.  The Fields wanted to create this type of content to satisfy what they hoped was an unfulfilled demand.  *Id*.  Their goal was to create erotica that is artistic and beautiful.  *Id*. at ¶ 7. The Fields chose the name 'X-Art' to reflect their artistic aspirations, and began investing all of

their available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality. *Id.* at ¶ 8. They created an Internet website called X-Art.com. *Id.* at ¶ 9.

**B.   Malibu Media Owns Its Copyrights**

Like many small businesses, at first, the Fields operated as an unincorporated partnership. *Id*. at ¶ 10. In due course, however, the Fields formed Malibu Media, their media production and distribution company, and contributed Mr. Fields Copyrights to it. *Id.*

Mr. Field authored and produced the videos while the Fields were an unincorporated partnership. *Id.* at ¶ 11. Upon founding the company on February 8, 2011, the Fields discussed with each other and agreed that the copyrights would be transferred to Malibu Media. *Id*. at ¶ 12. The Fields intended for the transfer of rights to cover every single right associated with a copyright; including the exclusive right to sue for past, present, and future infringement. *Id*. at ¶ 12. They also intended for the unincorporated entity to cease to exist. *Id*. at ¶ 12.

All copyrighted works created by Mr. Field were transferred through a written assignment of copyright to Malibu Media. *Id*. at ¶ 13. Mr. Field's current arrangement with the company is that the movies he creates are works made for hire and owned by the company. *Id*. at ¶ 14. Unfortunately, the company's attorney was mistakenly told to register some works as "works made for hire" and authored by Malibu Media despite these works being authored by Mr. Field prior to formation of the LLC and being subsequently assigned to the company. *Id*. at ¶ 15. The Fields instructed their attorneys to correct the registration and counsel for Malibu Media filed a Form CA, which is used for "C"orrecting and "A"mplifying a registration. With that Form, they also filed the assignment. *Id*. at ¶ 16. Since that time, the assignment has been supplemented to clarify that the plenary rights granted to Malibu Media, LLC via the use of the

words "all rights, title and interests, in and to the copyrights" was intended to include the right to sue for past, present, and future infringement, which the Fields had always assumed was impliedly included from the start, and to make clear that the Effective Date is February 8, 2011. *Id*. at ¶ 17. *See also* Exhibit B.

No other person or entity, other than Malibu Media, has or can claim to have an ownership interest in the copyrights. *Id*. at ¶ 18. Indeed, the Fields are currently and always have been the sole owners of Malibu Media, and its predecessor, their partnership. *Id*. at ¶ 19.

**C.   Malibu Media Wants the Infringement to Stop**

Malibu Media's customers can pay it a monthly recurring subscription fee of $19.95, or an annual subscription fee of $99.95 to access its entire library of HD Video content. *Id*. at ¶ 20. Internet subscription sales are and have always been by *far* Malibu Media's primary source of revenue. *Id*. at ¶ 21. As Malibu Media's business has grown its production value has also grown. *Id*. at ¶ 22. It spends millions of dollars a year to produce its content and run its website. *Id*. Currently, it has tens of thousands of members, but it is finding it hard to grow and maintain the memberships because so many people are finding its films for free. *Id*. at ¶ 23. The Fields have worked hard and invested millions of dollars in their business in order to produce the best quality product. *Id*. at ¶ 24.

For the first 3 years (when x-art.com was not as popular) the Fields did not have as many issues with piracy. *Id*. at ¶ 25. Now, that Malibu Media's videos are highly desirable, more people steal the videos than pay for a subscription. *Id*. Malibu Media is even getting many complaints from its members (asking why they should pay when Plaintiff's videos are available for free on the torrents). *Id*. at ¶ 26. The Fields firmly believe that they must protect Malibu Media's copyrights in order for it to survive and grow. *Id*. at ¶ 27. The Fields have gone over

their options many times and concluded that the only way they can protect their business and their ability to sell subscriptions is to sue infringers.  *Id*. at ¶ 29.  The Fields do not want to cause financial hardship to anyone, however they do want to deter infringement and be compensated for the intentional theft of Malibu Media's videos.  *Id.* at ¶ 30.

Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millennium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites.  *Id.* at ¶ 33.  Despite sending thousands of DMCA notices per week, the infringement continues.  *Id*. at ¶ 34.  And, if one searches for "X-Art" on a torrent website the site will reveal thousands of unauthorized torrents available for free.  *Id*.  Malibu Media has *never* authorized anyone to put its works on a torrent website.  *Id*. at ¶ 35.

Malibu Media does not seek to use the Court system to profit from the infringement like some have suggested.  *Id.* at ¶ 37.  As previously stated, revenues from subscriptions to X-Art.com are by far and away the dominant driver of Malibu Media's business.  *Id*.  Malibu Media wants the infringement to stop.  Accordingly, the purpose of these lawsuits is to motivate people to pay for subscriptions by deterring infringement and seek some reasonable compensation for the massive amount of infringement of our copyrights.  *Id.*

**D.   John Doe 6 Repetitively Stole Five (5) of Plaintiff's Films Over Five (5) Months**

John Doe 6 repetitively stole five of Plaintiff's films from February 4, 2012 to July 2, 2012: two on February 4, 2012, one on February 12, 2012, one on May 19, 2012, and one on July 2, 2012.  *See* Exhibit C to Plaintiff's Amended Complaint.[1]  Defendant's arguments as to Plaintiff's standing only apply to three of the infringements.   Defendant's arguments are inapplicable to two of the movies he infringed because the movies were created after the date of

---

[1] Although Plaintiff's Amended Complaint contained allegations for films owned by Patrick Collins, Inc., these claims have been dropped and accordingly any arguments directed to these claims are moot.

Malibu Media's formation and are therefore not subject to the copyright registration error or the recorded assignment.

### III.   LEGAL STANDARD

"Article III . . . gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas,* 495 U.S. 149, 154-155 (1990).  Under Supreme Court precedent, to establish standing, a plaintiff need only establish: (1) an injury, (2) which was caused by the Defendant, (3) that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

In evaluating a motion to dismiss for alleged lack of standing, courts "do not review the facts to see if [plaintiffs] have proven their allegations." *National Wildlife Federation v. Agricultural Stabilization and Conservation Service*, 901 F.2d 673, 677 (8th Cir. 1990).  Instead, "[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Id., quoting Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).  "[U]nless [Plaintiff's] allegations are incapable of proof at trial, [the Court] must accept them as true." *Id., citing United States v. SCRAP*, 412 U.S. 669, 689, 93 S.Ct. 2405, 2416-17 (1973).

Further, "[i]n reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits." *Nichols v. Muskingum Coll.,* 318 F.3d 674, 677 (6th Cir. 2003).  Rule 12(d), limiting a court's analysis to the allegations set forth in the complaint, "[b]y

its [express] terms, [] applies only to Rule 12(b)(6) and Rule 12(c) motions – not to Rule 12(b)(1)…[.]" *Meinman v. Kenton County, Ky.*, 2011 WL 721478, at *10 n.9 (E.D. Ky. 2011).

## IV.   ARGUMENT

### A.   Malibu Media is the Owner Of the Copyrights and Has Standing to Assert Its Claim

#### 1.   Copyright Policy Provides For Correction of Mistakes on Registrations

"It is generally established that inadvertent and immaterial misstatements on a copyright application do not invalidate a copyright registration." *Morelli v. Tiffany and Co.,* 186 F.Supp.2d 563, 565-66 (E.D.Pa.2002).   The Third Circuit has held that "a misstatement is material if it 'might have influenced the Copyright Office's decision to issue the registration.'"   *Gallup, Inc. v. Kenexa Corp.*, 149 Fed. Appx. 94, 96 (3d Cir. 2005).   Here, had Malibu Media submitted its original registration without error, the Register would have also granted a certificate.   "A misstatement or clerical error in the registration application if unaccompanied by fraud will not invalidate the copyright nor render the registration incapable of supporting an infringement action. This assumes, of course, that the work would have been eligible for copyright had a correct statement of facts been contained in the registration application." 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright,* § 7.20, at 7-197 & 198 (1990).   Malibu Media's registration certificates are not invalid.

Four circuit courts have ruled on this exact issue.   *See Jules Jordan Video, Inc. v. 144942 Canada Inc.,* 617 F.3d 1146, 1156 (9th Cir. 2010) ("[E]ven if the films were works for hire, the district court was correct that Gasper simply made a 'mistake in listing himself as the author' on the copyright registration forms. That mistake does not constitute a basis to invalidate the copyright."); *Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003) ("[C]ase law is overwhelming that inadvertent mistakes on registration certificates do not ... bar

infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement."); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1531 (11th Cir. 1994) (Holding a copyright was valid when it was improperly registered as a work for hire but instead conveyed through oral assignment later memorialized in writing the Eleventh Circuit noted "[c]opyright ownership and the effect of mistaken copyright registration are separate and distinct issues"); *Thomas Wilson & Co. v. Irving J. Dorfman Co.*, 433 F.2d 409, 412 (2d Cir. 1970) (Corporation's President was listed as author on copyrights instead of the Corporation, the Second Circuit held that the error was "minor, was made in good faith, and could not have affected the action taken by the Copyright Office").

*Morelli v. Tiffany and Co.,* 186 F.Supp.2d 563, 565-66 (E.D.Pa.2002) is factually identical and right on point. In *Morelli*, a jeweler mistakenly entered his company as obtaining the copyrights through a work for hire when he had instead retained the copyrights as the original author. "There is no dispute that Paul Morelli was the actual creator of the works in question. It is also undisputed that he was and is the sole shareholder of Paul Morelli Design, Inc. For all present practical purposes, he and Paul Morelli Design, Inc. are one and the same." *Id.* at 566. The Court held that because the error was "minor, was made in good faith, and could not have affected the action taken by the Copyright Office" the error was not material. Indeed, in *Morelli*, the Copyright Office was an intervening defendant to the case and the Register of Copyrights "has not asserted that the designation of Paul Morelli rather than Paul Morelli Design, Inc. would have negatively influenced any decision made by her Office." *Id.*

Copyright Office regulations provide a specific process to correct this mistake.   The Copyright Office regulations state:

(4) Where registration has been made for a work which appears to be copyrightable but after registration the Copyright Office becomes aware that, on the administrative record before the Office, the statutory requirements have apparently not been satisfied, or that information essential to registration has been omitted entirely from the application or is questionable, or correct deposit material has not been deposited, the Office will correspond with the copyright claimant in an attempt to secure the required information or deposit material or to clarify the information previously given on the application.

37 C.F.R. § 201.7.   Further, the Copyright Office manual states: "[w]here an employment-for-hire statement was either omitted, given in error, or stated erroneously, the Copyright Office will accept an application for supplementary registration." Copyright Office, *Compendium II: Compendium of Copyright Office Practices* § 1507.5(c) (1984).

### 2. <u>Defendant Misconstrues the Facts</u>

Defendant wrongly alleges that Plaintiff's copyrights should be invalidated on the basis of its unintended, harmless mistake. *See* Def's Mot at 5.   Defendant states, "the failure to so include this information not only invalidates the copyright, the alleged copyright in question is 'incapable of supporting an infringement action.'" *Id.*  Defendant relies on a case in the Second Circuit to support this presumption. *See Whimsicality, Inc. v. Rubie's Costume Co., Inc.,* 891 F.2d 452, 456 (2d Cir. 1989).   Defendant's citation to this case, however, is inherently misleading.   Indeed, in *Whimsicality*, the Second Circuit held that a copyright was invalid because the plaintiff deliberately deceived the Copyright Office when filing its registration. The plaintiff in *Whimsicality* did so because it was attempting to register a costume which is not copyrightable. *Id.* at 455.  Whimsicality attempted to circumvent this fact by listing it as a soft sculpture. *Id.* "It is the law of this Circuit that the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action.'"

11

*Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452, 456 (2d Cir. 1989).  *Whimsicality* made a material misrepresentation that would have caused the Copyright Office to reject the application.  As stated above, the Copyright Office would have accepted Plaintiff's application regardless of whether Malibu Media was listed as obtaining ownership through an assignment.

The United States Copyright Office policy demonstrates that it favors correcting or clarifying an application and not cancelling registrations.  This policy is particularly true regarding cancellation requests by third party infringers when there is no dispute between ownership by the copyright holders.  Defendant, in a footnote, refers the Court to a Michigan case where a John Doe defendant has petitioned the Copyright Office to invalidate Malibu Media's registrations.  *See* Def's Mot. FN 4.  The process set forth by the defendant in the Michigan case to cancel the registration does not exist.  Indeed, after speaking with the Copyright Office it appears that defendant entirely fabricated the process in order to attempt to dismiss or stay the case[2].   The Copyright Office has actually amended its regulations "to declare the Office will *never* respond favorably to a third party's request to cancel a registration."  5 Patry on Copyright § 17:108.

The copyright registration issue is really quite silly.  Malibu Media owns the copyrights. All Malibu Media did was erroneously indicate that it owns the copyrights through a work made for hire agreement instead of indicating that it owns the copyrights through an assignment. Plaintiff has since submitted a form CA, and the innocent error will be corrected as a matter of routine procedure by the Copyright Office.

---

[2] See 5 Patry on Copyright § 17:108 "An action to cancel registration".  Additionally, Plaintiff's counsel that registers its copyrights contacted an attorney in the Office of the General Counsel for the United States Copyright Office who confirmed Patry and stated, "[t]here is no provision or procedure allowing a third party to cancel another's registration.  Patry is right."

### 3.    The Assignments Are Not After the Fact

Defendant, erroneously, contends that, "Plaintiff's supplemental registrations do not fix the problem." Plaintiff's supplemental registrations alerted the Copyright Office to the error on the registration form – that Brigham Field should have been listed on the author line, not Malibu Media, and that the box for "Work for Hire" was not supposed to have been checked. Plaintiff was simply correcting an error on the form, as is the form's purpose. Plaintiff was not attempting to transfer any rights. The rights had been transferred long before Plaintiff registered the works. Defendant notes that a supplemental registration may not be used, "to reflect a change in ownership that occurred on or after the effective date of the basic registration or to reflect the division, allocation, licensing or transfer of rights in a work." Def's Mot. 6 citing 37 C.F.R. 201(b)(2)(iii)(A). As stated above, in this situation the work was transferred prior to the date of registration.

In this case, there is no dispute between the original author of the work and the owner of the work as to who owns the registration. This is because Brigham Field, the author of the work, registered the works as owned by Malibu Media – his company. Defendant's arguments to the contrary are completely frivolous.

Plaintiff's assignment, which it filed with the Copyright Office contemporaneously with its supplemental registrations, simply memorialized the oral agreement between Brigham and Malibu Media that took place when Brigham formed Malibu Media. At least three circuit courts have found the memorialization of oral assignments to be proper when the rights are being assigned by the author to his company. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003) ("[A] copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio."); *Eden Toys, Inc. v. Florelee*

*Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982) ("the 'note or memorandum of the transfer' need not be made at the time when the license is initiated; the requirement is satisfied by the copyright owner's later execution of a writing which confirms the agreement";) *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010) (the transfer document can be written after the oral transfer).

4. **Defendant Lacks Standing to Challenge Plaintiff's Assignment as a Third Party Infringer**

Each of Defendant's arguments regarding Plaintiff's standing to sue Defendant challenges the sufficiency of Plaintiff's assignment.  However, Defendant, as a third party infringer, lacks standing to challenge Plaintiff's assignment.  To explain, 17 U.S.C. §204(a) requires copyright assignments and licenses to be in writing.  And, when there is no dispute between the parties transferring copyrights, "the cases are legion holding that a third-party infringer lacks standing to invoke § 204." *Rottlund Co., Inc. v. Pinnacle Corp.*, 2004 WL 1879983 (D. Minn. 2004) (citing a list of cases holding the same.)  This makes sense because "writing requirements are designed to prevent against fraudulent claims by plaintiffs and are not intended to be invoked by defendants." *Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315, 318 (S.D.N.Y. 1996).  *See also, Basketball Mktg. Co., Inc. v. Steve & Barry's Univ. Sportswear*, CIV.A. 07-716, 2008 WL 5586141 (E.D. Pa. 2008) ("it would be anomalous to permit a third party infringer to invoke [17 U.S.C. § 204(a) ] against the licensee" where "the copyright holder appears to have no dispute with its licensee on the matter."); *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982) (same). *Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 592-93 (7th Cir. 2003) (when "there is no dispute between the copyright owner and the transferee about the status of the copyright, 'it would be unusual and unwarranted

to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement.'")

*Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 592-93 (7th Cir. 2003) is factually identical and right on point. In *Billy-Bob,* a defendant infringer challenged plaintiff's standing to sue on the basis that (1) the copyrights were mistakenly registered as a work for hire before the company existed and (2) the assignment agreement, after an oral transfer, was not valid. *Id.* at 592. The author of copyrights in Billy-Bob, like here, was one of Billy-Bob Teeth's owners. It is the exact same case. Under these facts, the Seventh Circuit explained that the Section 204(a) is tantamount to a statute of frauds and that a third party infringer cannot challenge an assignment:

> The statute is in the nature of a statute of frauds and is designed to resolve disputes among copyright owners and transferees. As the court said in Imperial Residential Design, "the chief purpose of section 204(a), (like the Statute of Frauds), is to resolve disputes between copyright owners and transferees and to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses or copyright ownership." The court went on to say that, where there is no dispute between the copyright owner and the transferee about the status of the copyright, "it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement."

*Id.* at 592-593. Here, there is no dispute between the author Brigham Field and the copyright owner, Malibu Media. Under these circumstances, John Doe 6 does *not* have standing to contest the assignment or challenge Plaintiff's standing to sue John Doe 6 for infringing its copyright.

### 5.     The Right to Sue for Past Infringements Is Irrelevant

Plaintiff obtained the copyrights to its movies in February of 2011, long before the Defendants infringed its works. Therefore, whether Plaintiff's assignment contained the right to sue for past infringements is *not* relevant. Further, this argument has no legs because Mr. Field clearly intended to assign all of his rights, including the right to sue for past infringement; and, at

least three circuit courts have found the memorialization of oral assignments to be proper when the rights are being assigned by the author to his company. *See  Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591 (7th Cir. 2003) ("[A] copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio."); *Eden Toys, Inc. v. Florelee Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982) ("the 'note or memorandum of the transfer' need not be made at the time when the license is initiated; the requirement is satisfied by the copyright owner's later execution of a writing which confirms the agreement";) *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010) (the transfer document can be written after the oral transfer).    Further, courts have held that a Plaintiff may assign this right up and until the commencement of trial.  *See Infodek, Inc. v. Meredith-Webb Printing Co., Inc.*, 830 F. Supp. 614, 620 (N.D. Ga. 1993) ("[E]ven when the claim is not assigned until after the action is instituted, the assignee is the real party in interest and can maintain the action"); *Intimo, Inc. v. Briefly Stated, Inc.,* 948 F. Supp. 315, 317-18 (S.D.N.Y. 1996).   Accordingly, if there was some technical deficiency with the assignment, which there is not, Plaintiff could correct it now.

### B.    Defendant's Argument That Plaintiff Lacks Capacity to Sue is Wrong

Defendant cites to 15 Pa. Cons. Stat. Ann. § 4141 for the proposition that "[a] nonqualified foreign business corporation doing business in this Commonwealth . . . shall not be permitted to maintain any action or proceeding in any court of this Commonwealth until the corporation has obtained a certificate of authority."  Defendant also points to 15 Pa. Cons. Stat. Ann. § 8587 for the similar position that "[a] nonqualified foreign limited partnership doing business in this Commonwealth may not maintain any action or proceeding in any court of this

16

Commonwealth until it has registered under this subchapter." These statutes do not preclude Plaintiff from bringing these suits for three reasons.

First, Plaintiff is registered with the Pennsylvania Department of State as of November 26, 2012. *See* Exhibit C. Although the registration occurred after initiation of the suit, this Court has held that registration after initiation of a suit is permissible. *See Dague v. Huddler*, 2008 WL 4444266 (E.D. Pa. 2008) (*citing Typh, Inc. v. Typhoon Fence of Pa., Inc.*, 461 F.Supp. 994, 996-997 (D.C.Pa.1978) ("it is not necessary that plaintiff comply with § 2014 [the predecessor statute to 15 Pa. C.S.A. § 4141(a)] before filing suit; compliance during the pendency of the litigation is sufficient.")) Because Plaintiff is registered, Defendant's argument fails.

Second, even if Plaintiff had not registered, since it is a California limited liability company only transacting business in interstate commerce, Plaintiff falls squarely within the exceptions of 15 Pa. Cons. Stat. Ann. § 4122. § 4122 provides that "a foreign business corporation shall not be considered to be doing business in this Commonwealth . . . by reason of carrying on in this Commonwealth any one or more of the following acts: (1) maintaining or defending any action or . . . effecting the settlement thereof or the settlement of claims or disputes . . . (9) Transacting any business in interstate or foreign commerce." *Id*. The Committee Comment to this statute provides that foreign companies conducting business in interstate commerce are not subject to the registration requirement so as not to run afoul of the Commerce Clause.

> A corporation is not "doing business" within the meaning of subsection (a) if it is transacting business in interstate commerce (subsection (a)(9)) or soliciting or obtaining orders that must be accepted outside Pennsylvania before they become contracts (subsection (a)(6)). These limitations reflect the provisions of the United States Constitution that grant to the United States Congress exclusive power over interstate commerce, and preclude states from imposing restrictions or conditions upon this commerce. It is intended that these subsections will be construed in a manner consistent with judicial decisions under the United States Constitution.

*Committee Comment (1988)*.   Here, Plaintiff does not have offices, an agent or any other connection to Pennsylvania except to the extent that it has filed law suits here and has subscribers here.   These are exempt activities under §4122.

Third, Fed. R. Civ. P. 17(b)(2) states that the capacity of a corporation to sue or be sued in federal court is determined "by the law under which it was organized."   *Id*.   Plaintiff was organized under the laws of the State of California.   In California, an entity only loses its capacity to sue when it dissolves or is "suspended by the State for non-payment of taxes." *Liebeskind v. Alliance Title Co.*, 2008 WL 160954 (N.D. Cal. 2008).   Neither reason applies to Plaintiff; accordingly, Plaintiff retains its ability to sue or be sued.

## V.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied.

DATED this 5th day of December, 2012.

> Respectfully submitted,
>
> FIORE & BARBER, LLC
>
> By:   /s/ *Christopher P. Fiore*
>     Christopher P. Fiore, Esquire
>     Aman M. Barber, III, Esquire
>     Attorneys for Plaintiff
>     425 Main Street, Suite 200
>     Harleysville, PA 19438
>     Tel:  (215) 256-0205
>     Fax:  (215) 256-9205
>     Email:  cfiore@fiorebarber.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

> By:   /s/ *Christopher P. Fiore*